UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ROSA FLORES and DAVID HOWARD, and on
behalf of themselves and all others similarly situated,

                                   Plaintiffs,

                   -against-

ALLIED AVIATION SERVICES INC.,

                                  Defendant.

-----------------------------------------------------------------X

Case No. 25 Civ. 6259

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiffs Rosa Flores and David Howard, on behalf of themselves and all others similarly situated, by and through their attorneys Kessler Matura P.C. and Sattiraju & Tharney, LLP, complaining of Defendant Allied Aviation Services Inc. ("Defendant" or "Allied"), allege as follows as for their Complaint:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this lawsuit to recover unpaid overtime wages and other damages on behalf of all Fueling Supervisor/Dispatchers ("Supervisors") employed by Allied, based on Defendant's violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the New York Labor Law ("NYLL"), Article 6 & 19, and appropriate rules and regulations.

2.     Allied failed to pay Plaintiffs and similarly situated Supervisors for overtime wages for all hours worked over 40.  Instead, Allied additional compensation under certain circumstances when Supervisors worked over 40 hours a week.  Allied did not pay Supervisors the additional compensation for all hours over 40.  The additional compensation was not paid at one and one-half times the Supervisors' regular hourly rates.  This was done according to Allied's policy to classify Supervisors as exempt from standard overtime pay.

3.      Plaintiffs bring the First Cause of Action on behalf of themselves and the following "Collective" pursuant to 29 U.S.C. § 216(b):

> All individuals who worked for Defendant in a Supervisor position at any time since November 10, 2022, except for the individuals employed at Newark Liberty International Airport.

4.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring the Second and Third Causes of Action on behalf of themselves and all similarly situated "NY Class Members" (together with the Collective, "Class Members" and the "Class")), defined as follows:

> All individuals who worked for Defendant in a Supervisor position within the State of New York at any time since November 10, 2019 (the "NY Class").

## JURISDICTION & VENUE

5.      Jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6.      This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because events giving rise to this action occurred in Queens County.

7.      This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a).

## THE PARTIES

*Plaintiff Rosa Flores*

8.      Flores is a resident of Suffolk County, New York.

9.      Flores has been employed by Defendant from 2015 through April 2024.

10.     Flores worked for Defendant as a Supervisor.

11.     Flores worked for Defendant at Laguardia Airport (LGA) in Queens, New York.

2

12.    Allied regularly scheduled Flores to work the 4:30p to 12:30a shift, five days a week.

13.    In addition to her regularly scheduled hours, Flores worked before and after her shift.

14.    Flores often began working about 15 minutes before the start of her shift.

15.    Flores worked beyond the scheduled end of her shift on an almost daily basis – at least by 30 minutes.

16.    Flores was required to work extra hours to complete her duties because of flight changes or so that the next Supervisor was prepared to relieve her.

17.    Flores was also regularly not fully relieved of her duties for purposes of a meal break because she was required to continue the operations of the position during that time or would be interrupted by her subordinates or superiors.

18.    In the three years before filing this Complaint, Flores was paid a bonus by Defendant for working beyond her regular shift.

19.    Flores regularly worked about 45 hours a week.

20.    Flores was, effectively, paid a salary, plus a bonus for working additional hours as described below.

21.    Flors was not paid overtime wages.  That is, Defendant did not pay her one and one-half times her hourly rate when she worked over 40 hours.

22.    While employed as a Supervisor, Flores was an "employee" as defined by 29 U.S.C. § 203(e)(1).

23.    While employed as a Supervisor, Flores was an "employee" as defined by NYLL §§ 190(2), 651(5).

3

*Plaintiff David Howard*

24.    Howard is a resident of Kings County, New York.

25.    Howard has been employed by Defendant for about 15 years.

26.    Howard worked for Defendant as a Supervisor until about May 2023.

27.    Howard worked for Defendant as a Supervisor at Laguardia Airport (LGA) in Queens, New York.

28.    While employed as a Supervisor, Allied regularly scheduled Howard to work the 1p to 9p shift, five days a week, or the 4a to 4p shift.

29.    In addition to his regularly scheduled hours, Howard worked before and after his shift.

30.    Howard often began working about 15 to 30 minutes before the start of his shift to get his tickets and set up for his shift.

31.    Howard worked beyond the scheduled end of his shift on an almost daily basis – at least by 30 minutes.  Often, when working the 1p to 9p shift, he was required to work passed midnight.

32.    Howard was required to work extra hours to complete his duties because of flight changes or so that the next Supervisor was prepared to relieve him.

33.    Howard was also regularly not fully relieved of his duties for purposes of a meal break because he was required to continue the operations of the position during that time or would be interrupted by his subordinates or superiors.

34.    In the three years before filing this Complaint, Howard was paid a bonus by Defendant for working beyond his regular shift.

35.    Howard regularly worked over 50 hours a week.

36.     Howard was, effectively, paid a salary, plus a bonus for working additional hours as described below.

37.     Howard was not paid overtime wages.  That is, Defendant did not pay him one and one-half times his hourly rate when he worked over 40 hours.

38.     While employed as a Supervisor, Howard was an "employee" as defined by 29 U.S.C. § 203(e)(1).

39.     While employed as a Supervisor, Howard was an "employee" as defined by NYLL §§ 190(2), 651(5).

***Defendant Allied Aviation Services Inc.***

40.     Defendant is a foreign corporation.

41.     Defendant is incorporated in Delaware.

42.     Defendant does business in the State of New York.

43.     Defendant's headquarters are located at 431 5th Avenue, 6th Fl., New York, New York 10016.

44.     On its website, Defendant lists mailing and shipping address as 431 5th Avenue, 6th Fl., New York, NY 10016, and lists this address as one of two locations to "Visit Us."

45.     Throughout the relevant period, Defendant operated out of airports throughout the nation, including:

    a.  Charleston International Airport (CHS) in Charleston, South Carolina;

    b.  George Bush Intercontinental Airport (IAH) in Houston, Texas;

    c.  John F. Kennedy International Airport (JFK) in Queens, New York;

    d.  Laguardia Airport (LGA) in Queens, New York;

    e.  Newark Liberty International Airport (EWR) in Elizabeth, New Jersey;

f.   Ronald Reagan Washington National Airport (DCA) in Washington, D.C.;

g.   Sacramento Airport (SMF) in Sacramento, California; and

h.   San Antonio International Airport (SAT) in San Antonio, Texas (collectively, without EWR, the "Airports").

46.   Defendant employed employees, including Plaintiffs, at the Airports.

47.   Defendant employed Supervisors at the Airports.

48.   At EWR, at times, Defendant has employed over 50 supervisors. *See* Ltr to St. of N.J. Dept. of Lab. (Feb. 12, 2016) at 1, *Mejia v. Allied Aviation Servs. Inc.*, 2:24 Civ. 684 (D.N.J Apr. 7, 2025), ECF No. 28-2 ("[Allied] employs sixty-five (65) supervisors at Newark International Airport . . . .").

49.   Defendant is an "employer" within the meaning of 29 U.S.C. § 203(d).

50.   Defendant is an "employer" within the meaning of N.Y. Lab. Law §§ 190(3), 651(6).

51.   At all relevant times, Defendant maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

52.   Defendant applied the same employment policies, practices, and procedures to all Supervisors throughout the State of New York, including policies, practices, and procedures with respect to classification and payment of overtime compensation.

53.   Defendant applied the same employment policies, practices, and procedures to all Supervisors at the Airports, including policies, practices, and procedures with respect to classification and payment of overtime compensation

6

54.     At all relevant times, the activities of Defendant constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

55.     Defendant maintains control, oversight, and direction over its operations and employment practices.

56.     At all times hereinafter mentioned, Defendant employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

57.     At all times hereinafter mentioned, Defendant's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## FLSA COLLECTIVE ACTION CLAIMS

58.     Plaintiffs bring the First Cause of Action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated individuals in the Collective who elect to opt-in to this action.

59.     Upon information and belief, there are over 400 Supervisors that are similarly situated to Plaintiffs by virtue of performing similar job without the benefit of overtime pay.

60.     Plaintiffs represent other Supervisors and is acting in their interests, as well as Plaintiffs' own interests in bringing this action.

61.     Defendant required Plaintiffs and other Supervisors to work over 40 hours per week without paying them overtime compensation at a rate of at least one and one-half times their regular hourly rate for all overtime hours worked.

62.     Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective, an overtime premium of one and one-half times their regular rate of pay for all work-hours Defendant suffered or permitted them to work more than 40 per workweek.

63.     The Collective is readily identifiable and locatable using Defendant's records.  The Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring the Second and Third Causes of Action on behalf of themselves and the NY Class, pursuant to Rule 23.

65.     The persons in the NY Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendant.

66.     Upon information and belief, the size of the NY Class exceeds 200 individuals.

67.     At any given time, Defendant employs dozens of Supervisors at JFK and LGA.

68.     Common questions of law and fact exist as to the NY Class that predominate over any questions only affecting them individually and include, but are not limited to:

   a.   Whether Defendant failed to pay Plaintiffs and the NY Class overtime wages in violation of the NYLL and Miscellaneous Industry Wage Order;

   b.   Whether Defendant failed to pay overtime wages to Plaintiffs and the NY Class for all hours worked over 40 in violation of the NYLL and Miscellaneous Industry Wage Order;

c. Whether Defendant failed to keep accurate time records for all hours worked by Plaintiffs and the NY Class;

d. Whether Defendant failed to furnish Plaintiffs and the NY Class with an accurate statement of, inter alia, wages, hours worked, and rates paid as required by NYLL § 195 with each payment of wages;

e. The nature and extent of Class-wide injury and the appropriate measure of damages sustained by the Plaintiffs and the NY Class; and

f. Whether Defendant lacked a reasonable, good-faith reason for failing to pay Plaintiffs and the NY Class overtime wages.

69.    Plaintiffs, as putative class representatives, fairly and adequately protect the interests of the NY Class and have no interests antagonistic to the NY Class.  Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

70.    A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against the corporate defendant.  Although the relative damages suffered by individual NY Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

71.    Further, Plaintiffs and the NY Class have been equally affected by Defendant's failure to pay proper overtime wages and provide proper wage statements.

72.    Plaintiffs' claims are typical of those of the NY Class.  Plaintiffs and the other NY Class Members were subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.  Plaintiffs' job duties are typical of those of the class members.

9

73.     This action is properly maintainable as a class action under Rule 23.

## COMMON FACTUAL ALLEGATIONS

74.     Plaintiffs and the Class Members contend that they are due overtime premiums under the FLSA and NYLL.

75.     Plaintiffs further contends that Defendant failed to provide Plaintiffs and the NY Class Members with accurate wage statements in violation of the NYLL.

76.     Defendant's conduct was widespread, repeated, and consistent.

77.     Defendant's policy and pattern or practice includes but is not limited to:

    a.  Not paying Supervisors overtime wages;

    b.  Not paying Supervisors for all hours worked over 40; and

    c.  Not reporting all the time that its Supervisors worked to obfuscate their unlawful overtime policy.

78.     Regardless of the location at which Supervisors worked for Defendant, Defendant's policies and practices remained substantially the same.

*Allied's Failure to Pay Overtime Wages*

79.     Allied misclassified Supervisors as exempt from standard overtime pay – wages paid at one and one-half times the regular rates.

80.     When working 40 or more hours, Plaintiffs and Class Members were paid for 40 hours of work each week.

81.     Defendant required Plaintiffs and Class Members to work over 40 hours per week.

82.     Supervisors, like Plaintiff, were scheduled to work at least five eight-hour shifts a week.

83.     Supervisors regularly worked beyond their scheduled start and end time.  At these times Supervisors did the following, among other duties:  met with and received instruction from

10

the Duty Managers or superiors; prepared company reports; settled job tickets; communicated with Defendant; and handled normal job duties resulting from changes to flight schedules or short staffing.

84.    Supervisors regularly arrived before their scheduled start to and began working upon arrival.

85.    Supervisors regularly stopped working after the end of the scheduled eight-hour shift.  They did this because, *inter alia*, they had to wait to be relieved by the next Supervisor who was still getting ready, to handle the work associated with late flights, and to complete the end-of-the-shift reports.

86.    Defendant was aware or should have been aware of all the work that Supervisors performed.

87.    Supervisors did not take uninterrupted meal breaks each shift.

88.    Supervisors were unable to take uninterrupted meal breaks because, *inter alia*, they were interrupted while on break by other employees or, given the flight schedules and changes, they were unable to leave their position during the period of time they would have taken their meal break.

89.    Defendant did not pay Plaintiffs and Class Members time and one half for all hours worked over 40 in a workweek in violation of the FLSA and the NYLL.

90.    Instead, Defendant paid Supervisors a bonus depending on the number of hours Defendant credited them for working beyond their scheduled end time.  Defendant did not pay any bonus if the Supervisor worked one extra hour.  Defendant paid Class Members for working two, four, or eight extra hours.

91.    The bonuses were paid a flat rate.  They were not keyed to the Supervisor's regular rate.  The bonuses were less than one and one-half time the Supervisor's regular rate.

***Class Members were Supervisors, Not Overtime-Exempt Managers***

92.    Supervisors reported to the Duty Managers.  Duty Managers reported to the Operations Managers.  Operations Managers report to the General Manager, who was responsible for the overall management and execution of the fueling service which Allied will provided at any particular airport.

93.    Supervisors performed their duties under the supervision and direction of the Duty Managers.

94.    Supervisors performed their duties consistent with Defendant's established company policies and procedures.

95.    Supervisors did not discipline Defendant's employees under their supervision.

96.    Rather, Supervisors reported workplace issues and infractions to Defendant based on company policies and procedures, often pursuant to the terms of collective bargaining agreements.

97.    Decisions related to hiring and firing of Defendant's employees were not made by Supervisors.

98.    Supervisors did not hire Defendant's employees.

99.    Supervisors did not fire Defendant's employees.

***Inaccurate Wage Statements***

100.    Defendant did not provide Plaintiffs and NY Class Members with an accurate wage statement each pay period.

101.    Defendant did not list accurate hours worked on Supervisors' paystubs.

102.    Instead, Defendant's paystubs reported 40 hours of work per week, instead of the actual number of hours worked per week.

103.    The bonuses paid to Plaintiffs and other Supervisors for working at certain increments beyond their schedule did not state the rates that such bonuses were paid nor the increments of pay.  Rather, those bonuses were reported as lump sums.

104.    As a result, Defendant did not furnish Plaintiffs and NY Class Members with an accurate statement of hours worked as required by NYLL.

105.    Defendant's failure to report Plaintiffs' and NY Class Members' actual hours worked and rates of pay facilitated its unlawful overtime policy.

106.    Defendant failed to provide Supervisors with the information necessary to determine whether their weekly hours exceeded 40 in a single workweek, entitling them to overtime, and the extent of the hours worked in excess of 40..

107.    Defendant failed to provide Supervisors with the information necessary to determine whether their bonuses were paid at time and one-half their regular rate or more.

108.    Defendant's failure to provide Supervisors with accurate information on their paystubs caused confusion among NY Class Members, in that they were not aware whether they were paid per hour or a salary.

109.    Defendant's failure to report Plaintiffs' and NY Class Members' actual hours worked and rates of pay delayed Supervisors from determining whether all their wages were paid on time.

110.    It was difficult for Supervisors to ascertain from their paystubs how many hours they were being paid for as part of the bonus pay, because it was listed as a lump sum, the paystubs

did not state the increments by which the bonus was paid, and the number of hours actually worked were not listed on the paystubs.

111. This hindered Plaintiffs and NY Class Members' ability to challenge the unlawful wage payment at the time of the payment.

112. This further hindered Plaintiffs and NY Class Members' ability to timely challenge instances of underpaid bonuses, notwithstanding that those bonuses did not comply with the FLSA and NYLL.

***Allied's Actions Were Willful and Done Without Reasonable Good Faith***

113. At all times relevant, Defendant's policies and practices were willful. As part of its business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, or policy that did not comport with the FLSA and the NYLL.

114. Defendant was or should have been aware that the FLSA and the NYLL required it to pay its Supervisors premium overtime pay for all hours worked over 40 per week.

115. Defendant did not perform a time study or analysis on Plaintiffs' job duties and hours worked.

116. Defendant knows that the test for whether an employee is overtime exempt under the FLSA and the NYLL requires that the employees at issue either hire and fire, or have significant input on such matters. *See* Ltr to St. of N.J. Dept. of Lab. (Feb. 12, 2016) at 2, *Mejia v. Allied Aviation Servs. Inc.*, 2:24 Civ. 684 (D.N.J Apr. 7, 2025), ECF No. 28-2.

117. Defendant neither interviewed Plaintiffs nor retained a third-party or agent to interview Plaintiffs about their job duties and hours worked, for purposes of determining whether Plaintiffs was properly denied overtime.

118.    Plaintiffs are unaware of Defendant engaging in any studies or analysis of their duties and the duties of their fellow Supervisors.

119.    Upon information and belief, Defendant never obtained an opinion from an attorney, expert, or government agency as to whether Plaintiffs and Supervisors were properly exempted from overtime pay.

120.    Although Defendant asserts that the New Jersey Department of Labor ("NJDOL") found that Supervisors at EWR "are exempt from receiving overtime pay,"[1] the surviving record, as made public by Defendant, only shows that the NJDOL did not find a violation of New Jersey law in 2016.

121.    Notably, in Defendant's letter to the NJDOL, the Defendant never asserted the Supervisors hire or fire Allied employees.  *See* Ltr to St. of N.J. Dept. of Lab. (Feb. 12, 2016) at 8, *Mejia v. Allied Aviation Servs. Inc*., 2:24 Civ. 684 (D.N.J Apr. 7, 2025), ECF No. 28-2 ( making no mention of hiring or firing duties).   *See also* Decl. of Rory McCorkmak (Apr. 4, 2025) ¶¶ 5-11, *Mejia v. Allied Aviation Servs. Inc*., 2:24 Civ. 684 (D.N.J Apr. 7, 2025), ECF No. 28-1 (same).

122.    Upon information and belief, a reasonable employer inquiring into this issue would have determined that Supervisors are not exempt from the FLSA and NYLL overtime requirements.

123.    That is because, *inter alia*, Supervisors are mid-level managers whose duties do not meet the requirements to be exempt from overtime under the "executive" exemptions of the FLSA and NYLL.

---

1    Decl. of Rory McCorkmak (Apr. 4, 2025) at 6, *Mejia v. Allied Aviation Servs. Inc*., 2:24 Civ. 684 (D.N.J Apr. 7, 2025), ECF No. 28-1 (cleaned up).

## FIRST CAUSE OF ACTION
### FLSA – Overtime Wages
### (Brought on behalf of Plaintiffs and the Collective)

124.     Plaintiffs incorporate by reference all preceding allegations.

125.     Plaintiffs, along with the Collective were non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

126.     Defendant employed Plaintiffs and members of the Collective for workweeks longer than 40 hours and willfully did not compensate Plaintiffs for all the time worked in excess of 40 hours per week, at a rate of at least one and one-half times their regular hourly rate, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a) (1).

127.     Plaintiffs expressed their consent to make these claims against Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A (Consents).

128.     Defendant did not make a good faith effort to comply with the FLSA with respect to their compensation to Plaintiffs and the FLSA Collective.

129.     Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

130.     As a consequence of the underpayment of wages, alleged above, Plaintiffs and the Collective have incurred damages thereby and Defendant is indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### NYLL – Unpaid Overtime
### (Brought on behalf of the Plaintiffs and the Class)

131.     Plaintiffs incorporate by reference all preceding allegations.

132.     At all times relevant, Plaintiffs and the NY Class were employees and Defendant was their employer within the meaning of the NYLL.

133.    Defendant failed to pay Plaintiffs and the NY Class at a rate of less than one and one-half time their regular rate for all hours worked.

134.    By the course of conduct set forth above, Defendant violated NYLL § 650, *et seq.*; 12 N.Y.C.R.R. § 142-2.2.

135.    Defendant's failure to pay all overtime compensation due to Plaintiffs and the Class was willful or otherwise lacked sufficient good faith within the meaning of NYLL § 663.

136.    As a consequence of the willful underpayment of wages, alleged above, Plaintiffs and the Class incurred damages thereby and Defendant is indebted to them in the amount of the unpaid wages and such other legal and equitable relief due to Defendant's unlawful and willful conduct, as the Court deems just and proper.

137.    Plaintiffs further seek the recovery liquidated damages, attorneys' fees, and costs to be paid by Defendant as provided by the NYLL.

### THIRD CAUSE OF ACTION
### NYLL – Notice and Record-Keeping Requirement Violation
### (Brought on behalf of Plaintiffs and the Class)

138.    Plaintiffs incorporate by reference all preceding allegations.

139.    Defendant did not supply Plaintiffs and the NY Class with an accurate statement of wages as required by NYLL § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

140.    Due to Defendant's violations of NYLL § 195, for each workweek that Defendant did not provide a proper wage statement, Plaintiffs and members of the NY Class are each entitled

to damages of $250 per workday, or a total of $5,000 per class member, as provided for by NYLL § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seek for the following relief:

A.      Leave to give notice to the Collective that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Certification of this case as a Class Action under Rule 23;

C.      Appointment of Plaintiffs as Class Representatives;

D.      Appointment of Plaintiffs' Counsel as Class Counsel;

E.      Unpaid overtime wages under the FLSA and NYLL;

F.      Liquidated damages;

G.      Statutory damages;

H.      Attorney's fees and costs of the action;

I.      Pre-judgment interest and post-judgment interest as provided by law;

J.      A declaratory judgment that the practices complained of are unlawful; and

K.      Such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: Melville, New York
        November 10, 2025                         Respectfully submitted,

                                        By: _____
                                              Troy L. Kessler
                                              Garrett Kaske
                                              **KESSLER MATURA P.C**
                                              534 Broadhollow Road, Suite 275
                                              Melville, New York 11747
                                              Telephone: (631) 499-9100
                                              tkessler@kesslermatura.com
                                              gkaske@kesslermatura.com

18

Ravi Sattiraju*
Carole Lynn Nowicki
**SATTIRAJU & THARNEY, LLP**
50 Millstone Road
Building 300, Suite 202
East Windsor, New Jersey 08520
Tel: 609-469-2110
Fax: 609-228-5649
rsattiraju@s-tlawfirm.com
cnowicki@s-tlawfirm.com
*pro hac vice* application forthcoming

***Attorneys for Plaintiffs and the Putative
FLSA Collective and New York Class***

# Exhibit A

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my current/former employer, Allied Aviation Services, Inc. and/or any related entities or individuals ("Allied"), for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*, and the New York Labor Law.

2. During the past three years, there were occasions when Allied failed to pay me for overtime wages and for all hours worked in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., and the New York Labor Law.

3. I designate my counsel, Kessler Matura P.C. and Sattiraju & Tharney, LLP to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against Allied and/or any related entities potentially liable.

Date: 08 / 13 / 2025

_____
Signature

Rosa Flores
_____
Print Name

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my current/former employer, Allied Aviation Services, Inc. and/or any related entities or individuals ("Allied"), for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*, and the New York Labor Law.

2. During the past three years, there were occasions when Allied failed to pay me for overtime wages and for all hours worked in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., and the New York Labor Law.

3. I designate my counsel, Kessler Matura P.C. and Sattiraju & Tharney, LLP to represent me and make decisions on my behalf concerning the litigation, including any settlement.  I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against Allied and/or any related entities potentially liable.

Date: 08 / 13 / 2025

_____
Signature

David Howard
_____
Print Name

Doc ID: cec7b19c19f614b7e7d4e7776d8b2b47e20ed61f